JOHN H. CROSS ET AL. *v.* PHENIX BANK.

By a provision in a bank charter, the stock of each stockholder shall at all times be pledged and liable for the payment of any debt (other than an original instalment) due, or owing, from said stockholder to the bank ; and may be sold, or so many shares thereof as shall be necessary, at public auction, for such debt, on default of payment thereof. *Held*, that this provision was not adopted with the view to secure *indorsers;* though unquestionably they may be entitled to relief against any *abuse* of the power which it confers.

THIS was a bill in equity, in which John H. Cross, Eliza-'beth Cross, Benadum Frink, William R. Frazier, John E. Weeden, William D. Wells, George D. Cross, and Wilkins Updike and Nathan F. Dixon, both the last named trustees for and in behalf of the creditors of said John H. Cross, represent, that on the 1st day of January, 1836, and long before, he, the said John H. Cross, was a stockholder in the Phenix Bank in Westerly, a bank legally incorporated and established, and now doing business in Westerly aforesaid, by the corporate name of " The President, Directors, and Company of the Phenix Bank in Westerly ;" and has owned, and now owns, on the books of said institution, one hundred and thirty-two shares, of the value of forty-three dollars each, amounting to the sum of five thousand six hundred and forty-six dollars, and more ; that said bank was incorporated in June, 1818, and by the 11th article of the constitution of said bank, it is enacted " That the stock of each stockholder shall at all times be pledged and liable for the payment of any debt (other than an original instalment) due or owing

from said stockholder to the bank ; and may be sold, or so many shares thereof as shall be necessary, by the directors, at public auction, for the satisfaction of such debt, on default of payment thereof." The question which grew out of the above provision of the bank charter appears from the prayer of the bill, which was, that the defendant may be ordered and adjudged to appropriate and apply the capital stock of said John H. Cross to the payment of the individual note of said Cross, indorsed by said George D. Cross, or so much thereof as shall be necessary to pay and discharge the same, in preference to any other debt due ; and to order and decree, that the indorser has a legal and equitable right to the lien on the stock of John H. Cross, in said bank ; and *that the charter thereof is for the benefit of indorsers, as well as for the protection of the bank ;* and to order and decree that the indorser be paid out of said stock.

*Updike* and *N. F. Dixon, Jr.* for plaintiff.
*B. Hazard,* for defendant.

By the Court. Stock specifically pledged by the terms of a contract for the payment of a debt, should be applicable from the date of the first express pledge, and when there are a number of such contracts the stock pledged should be applied to the payment of the debts secured thereby in successive order, according to the dates of the several pledges.

Where the provisions of the charter expressly pledge the stock, and the contract in terms pledges none, such pledge must be regarded rather as a legal and necessary consequence of the contract than as the voluntary act of the debtor at the time of contracting. If he contracts a debt at the bank in which he is a stockholder he has no choice, the *charter*, not *he* imposes the pledge, and the pledge in this case is general.

It extends to any debt otherwise than any original instalment due from the bank. The provisions of the charter apply as to such debts the moment a person becomes a stockholder. The condition on which he holds stock, even before he contracted any debts to the bank, is that if he do become indebted his stock shall be liable. The *bank* and the *individual stockholder* are then the only parties prior to this pledge, and it is applicable by the express terms of the pledge to all debts of the stockholder, that may at any time thereafter become due. It is a general pledge of certain property as to a particular description of debts. It is a reduction, so to speak, of the general law of the law in reference to all the debts and all the property of the debtor to a special form or remedy in reference to bank stock and debts due from the stockholder to this particular bank. Priority of date gives no preference under the *general* law, and why should it under the *special.* It is a remedy which the bank holds in its own hands for the security of the enforcement of the payments of debts due from its stockholders, and which has been given to it by the legislature no doubt for, among other objects, the better security of the public against bank failures. But whatever might have been the intent we cannot come to the conclusion that this provision was adopted with a view to the security of indorsers or sureties, though unquestionably they may be entitled to relief against any abuse of the power which it confers. The stockholders proposed it for their own security, and the legislature sanctioned it for that among other purposes. It was intended to secure the payment of such debts of each stockholder as became insecure, whether by the failure of principal or surety, or by the failure of both ; and such intent is inconsistent with an application of the pledge regulated by a priority of date. Such a rule would make the provision operate only for the benefit of the surety, where surety

4*

would not be needed until the indebtedness exceeded the amount of the stock; and if in all such cases the surety was sufficient, the pledge would be of no value to the bank, whilst as to all debts exceeding the amount of stock, and for which its additional security would be needed, the pledge would be wholly inapplicable. This never could have been the understanding, either of the legislature, or the stockholders, on becoming such, nor could the surety of an indebted stockholder indulge the expectation, with any degree of confidence, that such could be the construction of such a provision.

Undoubtedly the power conferred by this provision on the bank directors is susceptible of very great abuse; but in every such case it is believed that a court of equity might well interpose, not however on the ground that the indorser has a lien on the stock, but on general principles of equity.

No such interposition appears to us to be necessary, and we, therefore, dismiss the bill. But as it appears to us to have presented a question of legal construction which it was desirable should be settled not merely for the benefit of the complainant, but of the respondent, the said bill is dismissed without costs, for the respondent.

Let a decree be entered accordingly.